[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 302.]

THE STATE EX REL. COOKER RESTAURANT CORPORATION ET AL. *v.*
MONTGOMERY COUNTY BOARD OF ELECTIONS ET AL.
[Cite as *State ex rel. Cooker Restaurant Corp. v. Montgomery Cty. Bd. of Elections*, 1997-Ohio-315.]

*Elections—Prohibition—Attorneys—Protest to local liquor option petitions filed by nonattorney properly dismissed—R.C. 3501.39(A)(1) requires that objections be specified in the protest—Board of elections does not abuse its discretion in limiting scope of protest hearing to specific objections raised in written protest—Liquor permit holders have no due process right to notice of impending local option election—Writ denied.*

(No. 97-2001—Submitted October 20, 1997—Decided October 24, 1997.)

IN PROHIBITION.

_____

{¶ 1} Intervening respondent, Sphere Investments, Ltd. ("Sphere"), owns a shopping center located in Precinct W of Washington Township in Montgomery County, Ohio. One of Sphere's shopping center tenants is a liquor permit holder that operates a nightclub named Diamond's. Sphere hired Hans H. Soltau, an attorney, to prepare and file local liquor option petitions for a residence district consisting of Precincts Q and W of Washington Township.

{¶ 2} Pursuant to R.C. 4301.33 and 4305.14, the Division of Liquor Control of the Ohio Department of Commerce provided Soltau with a list of the names and addresses of liquor permit holders in the residence district who would be affected by the election. The list included relators Cooker Restaurant Corporation ("Cooker"), which operates a Cooker restaurant, and Brinker Ohio, Inc. ("Brinker"). The list, however, specified only Brinker's Cozymel's Mexican Grill and Chili's Grill & Bar restaurants and did not include its Romano's Macaroni Grill

restaurant, even though all of these restaurants are located in the same vicinity in the residence district. Soltau was not aware of the omission when he received the list from the Division of Liquor Control.

{¶ 3} On June 3, 1997, Soltau mailed notices to each of the permit holders specified on the list provided by the Division of Liquor Control. Soltau informed the permit holders that he was circulating local liquor option petitions concerning Precincts Q and W in Washington Township. Cooker and Brinker received the notices, although Brinker did not receive specific notice concerning its Romano's Macaroni Grill restaurant.

{¶ 4} On June 6, Soltau filed two local option petitions for the residence district with respondent, Montgomery County Board of Elections. Both petitions contained the same affidavit of Soltau certifying that he had notified all affected permit holders on the list supplied by the Division of Liquor Control in the manner and time required by R.C. 4301.33 and 4305.14 and that at the time every person signed the petition, each part-petition contained a copy of the list of affected permit holders provided by the Division of Liquor Control.

{¶ 5} Soltau's petitions sought placement of the following liquor option questions on the November 4 election ballot in Precincts Q and W of Washington Township:

1. "Shall the sale of wine, and mixed beverages by the package, under permits which authorize sale for on-premises consumption only, and under permits which authorize sale for both on-premise and off-premise consumption, be permitted in WASHINGTON TWP. PRECINCTS Q AND W?"

2. "Shall the sale of spirituous liquors by the glass be permitted in WASHINGTON TWP. PRECINCTS Q & W?"

3. "Shall the sale [of] beer as defined in Section 4305.08 of the Revised Code under permits which authorize sale for on-premises consumption only, and

2

under permits which authorize sale for both on-premises and off-premises consumption, be permitted in WASHINGTON TWP. PRECINCTS Q & W?"

**{¶ 6}** The board determined that the petitions contained more than the required number of valid signatures and certified the sufficiency and validity of the petitions in August for placement of the liquor option issues on the November 4 election ballot.

**{¶ 7}** Robert Young, an employee of The Craig Group, Inc., a public relations and consulting firm, subsequently became aware that the board had certified the local liquor option issues. The Craig Group, Inc. consults on liquor industry matters and conducts local option election campaigns for liquor permit holders. After Young contacted liquor permit holders in Precinct Q, relator Cooker authorized him to act on its behalf to file a statutory protest under R.C. 4301.33, 4305.14, and 3501.39 against the petitions. Young is not an attorney.

**{¶ 8}** On September 2, Young filed a protest on behalf of Cooker with the board, requesting that the petitions be invalidated. On the same date, relator Karen A. Meyer, an elector of Precinct W in Washington Township, filed a protest against the petitions. Young's and Meyer's protests specified certain grounds to invalidate the petitions.

**{¶ 9}** On September 9, the board held a hearing on the protests. At the hearing, Meyer's counsel objected to Cooker's representation by Young, who is not an attorney. Despite Meyer's objection, the board permitted Young to present Cooker's case through oral argument, examination of witnesses, and introduction of exhibits. The board further granted Meyer's motion to continue the protest hearing. On September 18, the board reconvened the protest hearing and reconsidered Meyer's objection to Young's representation of Cooker and dismissed Cooker's protest. The board determined that it lacked jurisdiction over Cooker's protest because it had been filed by a nonattorney. The board noted that although Cooker had an attorney present for the September 18 hearing, the statutory

deadlines for submitting a proper protest under R.C. 4301.33 and 4305.14 had passed.

{¶ 10} The board also granted Sphere's motion to restrict the evidence presented at the hearing to those grounds specified in Meyer's protest. Meyer then proffered evidence in support of her and Cooker's contention that Precincts Q and W did not constitute an appropriate residence district under R.C. 4301.01(B)(19) because they are not contiguous.

{¶ 11} Although Brinker appeared at the hearing, the board did not permit it to introduce evidence. Instead, the board indicated that it would conduct its own investigation concerning the allegation that Brinker had not received notice that its liquor permit at its Romano's Macaroni Grill restaurant would be affected by the liquor option petitions. At the conclusion of the September 18 hearing, the board denied Meyer's protest.

{¶ 12} On September 24, relators, Cooker, Meyer, and Brinker, brought this action for a writ of prohibition to prevent the board from holding a November 4 election on the liquor option issues. Relators also filed a motion for the issuance of an alternative writ. We granted Sphere's motion to intervene as a respondent. Respondents filed answers and motions to dismiss, and relators filed a motion to strike the motions to dismiss. Relators and Sphere subsequently filed merit briefs. Pursuant to the expedited election schedule set forth in S.Ct.Prac.R. X(9), this cause is now before the court for a consideration of the merits.

———————————

*Brunner, Brunner & Alexander Co., L.P.A.*, *Rick L. Brunner* and *Lisa A. Atkins*; *J. Richard Lumpe*; *Benesch, Friedlander, Coplan & Aronoff, L.L.P.*, *N. Victor Goodman, James F. DeLeone* and *Mark D. Tucker*, for relator Cooker Restaurant Corporation.

*Gary L. Jones Co., L.P.A.*, *Gary L. Jones* and *James J. Andrioff*, for relator Brinker Ohio, Inc.

*Boucher & Boucher* and *Richard A. Boucher*; and *Don A. Little*, for relator Karen A. Meyer.

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Victor T. Whisman*, Assistant Prosecuting Attorney, for respondent Montgomery County Board of Elections.

*McTigue & Brooks* and *Donald J. McTigue*, for respondent Sphere Investments, Ltd.

———————————

*Per Curiam.*

Prohibition

{¶ 13} In order to be entitled to the requested writ of prohibition, relators must establish that (1) the board is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is not legally authorized, and (3) if the writ is denied, they will suffer injury for which no other adequate legal remedy exists. *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 36-37, 671 N.E.2d 1, 3. A board's exercise of judicial or quasi-judicial power is unauthorized if it engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 292, 649 N.E.2d 1205, 1208. Here, relators contend that the board abused its discretion and acted in clear disregard of applicable statutes and other law. An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude. *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, 1283.

With the foregoing standards in mind, relators' claims are next addressed.

Cooker Protest: Unauthorized Practice of Law

{¶ 14} Relators contend that the board of elections abused its discretion and acted in clear disregard of applicable law by dismissing Cooker's protest because it had been submitted by Young, a nonattorney, on behalf of Cooker.

**{¶ 15}** The last paragraph of R.C. 4301.33(B) provides the following protest procedure for local option petitions concerning the sale of wine, mixed beverages, spirituous liquor, and intoxicating liquor:

"Protest against local option petitions may be filed by any elector eligible to vote on the question or questions described in the petitions or by a permit holder in the precinct or residence district as described in the petitions, not later than four p.m. of the sixty-fourth day before the day of the general or primary election for which the petition qualified. The protest shall be in writing and shall be filed with the election officials with whom the petition was filed. Upon filing of the protest, the election officials with whom it is filed shall promptly fix the time for hearing it, and shall mail notice of the filing of the protest and the time and place for hearing it to the person who filed the petition and to the person who filed the protest. At the time and place fixed, the election officials shall hear the protest and determine the validity of the petition."

**{¶ 16}** R.C. 4305.14(D) provides a similar protest procedure for local option petitions on the sale of beer:

"Protest against a local option petition may be filed by any qualified elector eligible to vote on the question or questions specified in the petition or by a permit holder in the precinct or residence district as described in the petition, not later than four p.m. of the sixty-fourth day before the day of such general or primary election. Such protest must be in writing and shall be filed with the election officials with whom the petition was filed. Upon filing of such protest the election officials with whom it is filed shall promptly fix the time for hearing the same, and shall forthwith mail notice of the filing of the protest and the time for hearing it to the person who filed the petition which is protested and to the person who filed the protest. At the time fixed, the election officials shall hear the protest and determine the validity of the petition."

**{¶ 17}** In *Sharon Village Ltd. v. Licking Cty. Bd. of Revision* (1997), 78 Ohio St.3d 479, 678 N.E.2d 932, syllabus, we held that "[t]he preparation and filing of a complaint with a board of revision on behalf of a taxpayer constitute the practice of law." See, also, *Gammarino v. Hamilton Cty. Bd. of Revision* (1997), 80 Ohio St.3d 32, 684 N.E.2d 309. In so holding, we relied on several factors, including that (1) the board of revision is a quasi-judicial body, (2) in order to invoke its jurisdiction, it is necessary to file a verified complaint, (3) the board must give notice to property owners and boards of education when a complaint is filed by other parties, and (4) preparation and filing of the complaint contained statutorily defined jurisdictional requirements that, if not properly met, barred the rights of owners to contest their valuations. *Sharon Village*, 78 Ohio St.3d at 481-482, 678 N.E.2d at 934-935.

**{¶ 18}** For the reasons that follow, the board did not abuse its discretion or clearly disregard applicable law by dismissing Cooker's protest because it was not submitted by an attorney. First, a board of elections, like a board of revision, is a quasi-judicial body when it considers protests. See *State ex rel. Harbarger v. Cuyahoga Cty. Bd. of Elections* (1996), 75 Ohio St.3d 44, 45, 661 N.E.2d 699, 700, citing *Thurn*, 72 Ohio St.3d at 291, 649 N.E.2d at 1207 ("A protest hearing in election matters is a quasi-judicial proceeding."). Second, in order to invoke the board's statutory authority to consider protests to local liquor option petitions under R.C. 4301.33(B) and 4305.14(D), it is necessary to file a protest. Third, the board must give notice to the petitioner of the filing of a protest, fix a time for hearing it, and notify the petitioner and protestor of the time and place for the hearing. R.C. 4301.33 and 4305.14(D). Fourth, if the protestor does not properly meet the requirements for filing a protest, *e.g.*, time or specificity, it may bar the protestor's rights to contest the petitions. See R.C. 4301.33, 4305.14(D), and 3501.39(A)(1).

**{¶ 19}** Therefore, based on *Sharon Village*, the preparation and filing of a statutory protest with a board of elections constitute the practice of law. See R.C.

4705.01. Young submitted a protest, gave professional advice to his client, and appeared at the September 9 protest hearing before the board on Cooker's behalf, presenting argument and evidence, and conducting direct examination of witnesses. See *Cincinnati Bar Assn. v. Estep* (1995), 74 Ohio St.3d 172, 657 N.E.2d 499. The board of elections thus properly dismissed Cooker's protest because it was not properly filed by an attorney. Relators' reliance on *Jemo Assoc., Inc. v. Lindley* (1980), 64 Ohio St.2d 365, 18 O.O.3d 518, 415 N.E.2d 292, is unavailing because, as noted in *Sharon Village*, 78 Ohio St.3d at 483, 678 N.E.2d at 935, we did not consider the issue in *Jemo* because it was irrelevant. This issue, however, is not irrelevant here.

{¶ 20} Finally, any argument that Young relied on the advice of the board in determining that it was permissible for a nonattorney to file a protest is likewise meritless. Sphere introduced evidence that the board did not advise Young whether he had to be an attorney to file a protest on behalf of someone else. Furthermore, any mistaken advice by the board of elections did not estop it from invalidating the protest submitted by Young. See *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 63, 17 OBR 64, 66, 477 N.E.2d 623, 625, quoting *Besl Corp. v. Pub. Util. Comm.* (1976), 45 Ohio St.3d 146, 150, 74 O.O.2d 262, 265, 341 N.E.2d 835, 838 (" '[T]he principle of estoppel does not apply against a state or its state agencies in the exercise of a governmental function.' "); *State ex rel. McMillan v. Ashtabula Cty. Bd. of Elections* (1992), 65 Ohio St.3d 186, 189, 602 N.E.2d 631, 633.

Meyer Protest: Specificity

{¶ 21} Relators contend that the board abused its discretion and acted in clear disregard of applicable law by not invalidating the petitions because (1) Precincts Q and W are not a "residence district" as defined in R.C. 4301.01(B)(19), since they are not contiguous, and (2) Sphere did not attach an original R.C. 4305.14(B) affidavit to its beer option petition. Meyer, however, did not raise either

of these specific objections in her written protest. The board prevented Meyer from introducing evidence relating to objections she had not raised in her protest.

{¶ 22} R.C. 3501.39(A)(1) provides that a board of elections shall accept any petition unless a "written protest against the petition or candidacy, *naming specific objections*, is filed, a hearing is held, and a determination is made by the election officials with whom the protest is filed that the petition is invalid, *in accordance with any section of the Revised Code providing a protest procedure*." (Emphasis added.) R.C. 3501.39(A)(1) thereby incorporates the liquor option protest procedures of R.C. 4301.33 and 4305.14(D). See *Harbarger*, 75 Ohio St.3d at 46, 661 N.E.2d at 700; *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 585, 651 N.E.2d 995, 998 ("All statutes relating to the same general subject matter must be read *in pari materia*, and in construing these statutes *in pari materia*, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes.").

{¶ 23} R.C. 3501.39(A)(1) required Meyer to specify her objections in her protest. One of the evident purposes of this requirement is to give notice to the petitioner and the opportunity to present evidence to rebut the objections specified. See R.C. 4301.33 and 4305.14(D). This purpose is not served if the board permits protestors to introduce evidence on objections not specified in their protests. Meyer herself acknowledged the specificity requirement of R.C. 3501.39(A)(1) by referring to it in her protest.

{¶ 24} Based on the unambiguous language of R.C. 3501.39(A)(1), the board did not err in preventing Meyer from introducing evidence which was not pertinent to the specific objections in her written protest. Further, because the alleged substantive petition defects now raised by Meyer in this action were not specified in her protest, we need not consider these issues. *State ex rel. Shumate v. Portage Cty. Bd. of Elections* (1992), 64 Ohio St.3d 12, 14-15, 591 N.E.2d 1194, 1196-1197. Finally, while relators correctly observe that the board is empowered

to refuse to accept a petition even in the absence of a written protest if it determines that the petition violates the applicable legal requirements under R.C. 3501.39(A)(3), see *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 176, 685 N.E.2d 502, the board does not abuse its discretion by limiting the scope of a protest hearing to the specific objections raised by the written protest necessitating the hearing. R.C. 3501.39(A)(1).

Cooker and Meyer: Adequate Remedy at Law

{¶ 25} Cooker's and Meyer's claims regarding alleged substantive defects in the liquor option petitions are additionally barred because they failed to properly raise these issues by valid statutory protest, which is an adequate remedy that precludes issuance of an extraordinary writ. *Shumate*, 64 Ohio St.3d at 14-15, 591 N.E.2d at 1196-1197. Cooker's protest was invalid because it was not prepared and submitted by an attorney. Meyer's protest failed to specify the claims she now raises.

Cooker and Meyer: Laches

{¶ 26} Cooker's and Meyer's claims are also barred by laches. "Extreme diligence and promptness are required in election-related matters." *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 413, 650 N.E.2d 859, 862.

{¶ 27} Although the liquor option petitions were circulated and filed with the board in early June, Cooker and Meyer waited until after the board certified the sufficiency and validity of the petitions in August and thereafter until the statutory protest deadline in early September to file their protests. Cooker received notice of the petitions' circulation and filing in June and could have discerned its main substantive objections at that time. At the September 9 protest hearing, Meyer requested and received a continuance of over one week. Cooker and Meyer then waited another six days following the board's September 18 decision to file this prohibition action. Their delay was prejudicial because by the time the expedited

briefing schedule was complete, the board of elections could not make changes in the absentee ballots, which had already been printed. Some of the absentee ballots had also been mailed. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections* (1995), 74 Ohio St.3d 143, 145-146, 656 N.E.2d 1277, 1279. In fact, the continuance of the protest hearing because of Meyer's request forced the board to delay printing the absentee ballots.

{¶ 28} Consequently, Cooker and Meyer did not exercise the required diligence in this election case, and their claims are barred by laches.

Brinker: Notice

{¶ 29} Relators, including Brinker, finally assert that Sphere's failure to provide notice to Brinker under R.C. 4301.33 and 4305.14 of the circulation of the liquor option petitions denied Brinker due process and deceived signers of the petitions. The board did not permit Brinker to argue or introduce evidence at the protest hearings.

{¶ 30} Notwithstanding relators' argument to the contrary, liquor permit holders do not possess a constitutional due process right to notice of an impending local option election because the election is a legislative action by the local electorate. *37712, Inc. v. Ohio Dept. of Liquor Control* (C.A.6, 1997), 113 F.3d 614, 619 ("[T]he failure of Ohio law to provide notice and a hearing prior to the alleged 'taking' (consequent to an adverse local option election) of a person's privilege pursuant to an ODLC-issued liquor license to market one or more varieties of alcoholic beverages in a particular precinct or residence district does not violate due process, because no notice or opportunity to be heard need [precede] any legislative action of general applicability."); *State ex rel. Red Carpet Kamms, Inc. v. Cuyahoga Cty. Bd. of Elections* (1988), 46 Ohio App.3d 126, 127, 546 N.E.2d 418, 419.

**{¶ 31}** In addition, R.C. 4301.33 and 4305.14 require only that the petitioner and the board provide notice to the liquor permit holders on the list provided by the Division of Liquor. For example, R.C. 4301.33 provides:

"Within five days after a petitioner has received from the division the list of liquor permit holders who would be affected by the question or questions set forth on a petition for local option election, *the petitioner shall*, using the form provided by the board of elections, *notify by certified mail each permit holder whose name appears on that list. * * **

"The petitioner shall attach a copy of the list provided by the division to each petition paper. *A part petition paper circulated at any time without the list of affected permit holders attached to it is invalid.*

"At the time the petitioner files the petition with the board of elections, the petitioner shall provide to the board the list supplied by the division and an affidavit certifying that the petitioner notified all affected permit holders on the list in the manner and within the time required in this section and that, at the time each signer of the petition affixed the signer's signature to the petition, the petition paper contained a copy of the list of affected permit holders.

"Within five days after receiving a petition calling for an election for the submission of one or more of the questions specified in divisions (A) to (C) of section 4301.35 or section 4301.351 of the Revised Code, *the board shall give notice by certified mail that it has received the petition to all liquor permit holders whose names appear on the list of affected permit holders filed by the petitioner as furnished by the division. Failure of the petitioner to supply the affidavit required by this section and a complete and accurate list of liquor permit holders as furnished by the division invalidates the entire petition. * * **" (Emphasis added.) See, also, R.C. 4305.14(B), which contains similar requirements; cf. *Kamms*, 46 Ohio App.3d at 127, 546 N.E.2d at 418-419, which held that permit holders have an express statutory right to notice of the filing of a local option election petition

under a previous version of R.C. 4301.33, which did not limit the notice requirement to those affected liquor permit holders specified on the list provided by the Division of Liquor Control.

{¶ 32} Relators' argument that the failure to specifically notify Brinker deceived signers of the petitions so as to render the petitions invalid is also meritless. None of the cases cited by relators applies to this case, where the petitioner complied with all applicable legal requirements. Unlike *State ex rel. Green v. Casey* (1990), 51 Ohio St.3d 83, 554 N.E.2d 1288, there are no legal defects in the petitions here. Cf. *Thurn*, 72 Ohio St.3d at 293, 649 N.E.2d at 1208, quoting *Cincinnati v. Hillenbrand* (1921), 103 Ohio St. 286, 133 N.E. 556, paragraph two of the syllabus (" '[W]here the mandatory provisions of the Constitution or statute prescribing the necessary preliminary steps to authorize the submission to the electors of an initiative statute or ordinance have been complied with, the submission will not be enjoined.' ").

Conclusion

{¶ 33} Accordingly, for the foregoing reasons, we deny the writ of prohibition. Based on the evidence presented by the parties, relators have not established their entitlement to the requested extraordinary relief. This conclusion moots the parties' various motions.

*Writ denied.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., concurs separately.

DOUGLAS, J., concurs in judgment only.

––––––––––––––––

**COOK, J., concurring**.

{¶ 34} I concur in the judgment denying the writ of prohibition as to Brinker on the notice issue. As to Cooker and Meyer, I concur in the judgment denying

the writ only on the basis of laches and concur with the analysis of that subject in the *per curiam* opinion.

_____