THE STATE, EX REL. SHUMATE, *v.* PORTAGE COUNTY BOARD OF ELECTIONS.

[Cite as *State, ex rel. Shumate, v. Portage Cty.*
*Bd. of Elections* (1992), 64 Ohio St.3d 12.]

(No. 92–508—Submitted May 5, 1992—Decided May 20, 1992.)

*Willis & Linnen Co., L.P.A.,* and *Jerome T. Linnen, Jr.,* for relator.

*David W. Norris,* Prosecuting Attorney, and *Kent M. Graham,* for respondent.

*Per Curiam.* For the following reasons we grant a writ of prohibition and order respondent not to place Howe's name on the Democratic primary ballot for the June 2, 1992 election. Respondent's motion for summary judgment is granted as it pertains to Wilkins and, in part, as it pertains to Howe.

R.C. 3501.11 requires boards of elections to review, examine and certify the sufficiency and validity of petitions and nominating papers. R.C. 3513.05 provides for protests of declarations of candidacy filed in primary elections and declares that the decision of a board of elections as to a protest is final. In *State, ex rel. Flynn, v. Bd. of Elections of Cuyahoga Cty.* (1955), 164 Ohio St. 193, 57 O.O. 402, 129 N.E.2d 623, paragraph one of the syllabus, overruled on other grounds, *State, ex rel. Schenck, v. Shattuck* (1982), 1 Ohio St.3d 272, 1 OBR 382, 439 N.E.2d 891, we held that the decision of a board of elections in such a case was not subject to judicial review except for "allegations of fraud, corruption, abuse of discretion or a clear disregard of statutes or legal provisions * * *." Moreover, in *Maranze v. Montgomery Cty. Bd. of Elections* (1958), 167 Ohio St. 323, 4 O.O.2d 401, 148 N.E.2d 229, and *State, ex rel. Lippitt, v. Cuyahoga Cty. Bd. of Elections* (1978), 56 Ohio St.2d 70, 10 O.O.3d 143, 381 N.E.2d 1129, we held that a statutory protest is an adequate remedy that will preclude issuance of an extraordinary writ. Therefore, a relator must file a protest on relevant issues before bringing an action for an extraordinary writ based on those issues. By filing a protest, a relator avoids the charge that he or she has bypassed an adequate legal remedy. Bringing the issues before the board establishes a record from which the court, in a

later action for an extraordinary writ, may judge whether the board was affected by fraud or corruption, abused its discretion, or clearly disregarded statutes or other legal provisions. Without the record, there is no basis for a court to decide these issues.

In this case, relator did not protest Wilkins's candidacy. Moreover, the issues on which he now challenges Wilkins's candidacy were not raised by Whittington when he protested Wilkins's candidacy before respondent. Accordingly, relator had an adequate remedy at law that he failed to pursue and, consequently, failed to establish a record on which this court may base a decision. Similarly, relator now challenges Howe for not complying with R.C. 311.01(B)(7). However, he failed to raise this issue as part of his protest against Howe's candidacy and so failed to pursue an adequate legal remedy and establish a record on this issue. Accordingly, we grant respondent's motion for summary judgment with respect to Wilkins and with respect to Howe as to any R.C. 311.01(B)(7) issue.

Relator did protest the issue of Howe's lack of five years of full-time experience pursuant to R.C. 311.01(B)(9), and he raises the same issue in this action. He asserts that respondent has a mandatory duty to apply R.C. 311.01(B)'s qualifications via R.C. 3501.11(J) and (K). Respondent denies this. It claims that the administrative judge of the court of common pleas has that duty and that it may rely on the findings of the administrative judge, citing former Directive No. 87–23 of the Secretary of State. Respondent then asserts that the administrative judge and Secretary of State are necessary parties that have not been joined.

R.C. 3501.11 states in part:

"Each board of elections shall exercise by a majority vote all powers granted to such board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall:

" * * *

"(K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers[.]"

R.C. 3501.38 prescribes certain technical rules concerning declaration of candidacy and nominating petitions.

R.C. 3501.39 then provides in part:

"The secretary of state or board of elections shall accept any petition described in section 3501.38 of the Revised Code *unless one of the following occurs:*

" * * *

"(C) The candidate's candidacy or the petition violates the requirements of this chapter [3501.], Chapter 3513. of the Revised Code, *or any other requirements established by law.*" (Emphasis added.)

In *Flynn, supra,* we held that a board of elections had authority to rule on R.C. 1901.06's experience requirement for judicial candidates. The requirement of R.C. 1901.06 is not different in kind from the requirements of R.C. 311.01(B) at issue here. Both statutes are outside the elections law, and both deal with substantive issues of eligibility for candidacy other than technical declaration or petition requirements. In *Flynn,* we reasoned that R.C. 3501.11(K) and certain language about protests in R.C. 3513.262 conferred authority on the board to judge the experience requirements, particularly in light of certain precedent, stating:

"Those decisions clearly establish the authority of a board of elections to have, upon protest, a hearing, take evidence and render a decision on the facts, although the facts are disclosed by testimony not strictly applicable to a technical construction of the nominating petitions. Section 3513.262, Revised Code, giving authority to determine the 'validity or invalidity' of the petition of a candidate confers upon the board of elections authority to determine the facts which will disclose whether the candidate may lawfully be elected to the office he seeks." 164 Ohio St. at 200, 57 O.O. at 406, 129 N.E.2d at 627.

R.C. 3513.05, not R.C. 3513.262, contains the protest language applicable to this election for sheriff. It, too, states, in part, that "[a]t the time fixed [for a protest hearing] such election officials shall hear the protest and determine the validity or invalidity of the declaration of candidacy and petition." Moreover, R.C. 3501.39(C) clearly implies that the board should not approve a petition if the candidacy violates the election law "or any other requirements established by law." Accordingly, we hold that respondent has not only the authority to review R.C. 311.01(B)'s qualification requirements for the office of sheriff, but also the duty to do so whenever those qualifications are challenged in a protest.

We also reject respondent's argument that the administrative judge has primary authority to judge the qualifications of candidates for sheriff and that it could rely on the judge's findings without abusing its discretion or clearly disregarding the statute. In this case, the administrative judges of the Portage County Court of Common Pleas respectively certified their findings in 1991 for Howe and in 1992 for Wilkins that each was an eligible candidate with regard to the qualifications set forth in R.C. 311.01(B)(1), (2), (3), (4), (5), and (9). R.C. 311.01(B)(6) requires candidates to submit to a national, state, and local search of fingerprint files "to disclose any criminal record." Fingerprinting is to be under the direction of the administrative judge, who must

"notify the board * * * of his findings." Although the statute uses the term "findings," there is nothing to "find" except that the candidate or potential appointee does or does not have a criminal record. Presumably, these results will be used to determine whether the candidate or potential appointee is disqualified under R.C. 311.01(B)(5) by having been convicted of a felony, crime involving moral turpitude, or first degree misdemeanor, but neither division (B)(5) nor (B)(6) calls upon the administrative judge to make that determination.

Similarly, R.C. 311.01(B)(7) requires candidates to complete six-year residence and employment histories and file them with the administrative judge, but the judge's only duty is to forward them to the board of elections with the results of the fingerprint check.

Under R.C. 311.01(F), the candidate must swear to the truth of any information provided to the administrative judge to verify the person's qualifications for office. However, nothing authorizes or requires the administrative judge to make any judgments about the information.

Therefore, we hold that the administrative judges' certifications in this case that Howe and Wilkins met the various qualifications of R.C. 311.01(B) were gratuitous, and respondent was not justified in relying on those certifications when presented with a protest, but was required to make its own determinations about qualifications, as in other cases.

At the protest hearing, respondent found, on advice of its legal counsel and 1990 Ohio Atty.Gen.Ops. No. 90–112, that R.C. 311.01(B)(9)'s experience requirement was waived for Howe in 1988 by Section 3 of Am.Sub.H.B. No. 683, effective March 11, 1987. Section 3 stated:

"For election or appointment to the office of sheriff in 1988 only, a person who meets the requirements under divisions (B) and (C) of section 311.01 of the Revised Code, as amended by this act, except the requirements of division (B)(8), (B)(9), or both may take all actions otherwise necessary to comply with divisions (B) and (C) of that section, and if he meets the other requirements, shall be considered an eligible candidate. If such candidate is appointed or elected to the office of sheriff and successfully completes the basic training course under division (D) of section 311.01 of the Revised Code, as amended by this act, in the time prescribed by that division, the requirements of division (B)(8) and (9) are hereby waived for that candidate. This section has no effect after December 31, 1988." (141 Ohio Laws, Part III, 5509.)

The Attorney General's opinion on which respondent relied concedes that the first and last sentences of Section 3 strongly suggest that it was to have application only for the 1988 election. Nevertheless, the opinion applied Section 3 to the 1992 election and beyond, reasoning that the first sentence of

Section 3 is by itself sufficient to exempt candidates from the experience requirement; that the second sentence requiring an elected candidate exempted by the first sentence to complete a basic training course pursuant to R.C. 311.01(D) was redundant with regard to the 1988 election because after a candidate had been qualified under the first sentence there would have been no need to waive compliance under the second sentence; and that there was no need to disqualify candidates under the second sentence because R.C. 311.01(G), in the permanent law, vacates the office of any sheriff who fails to complete the basic training requirement.

The opinion then reasoned that Section 3 must have had some other purpose and that other purpose must be to make the waiver perpetual for all qualifying sheriffs. The Attorney General supported this conclusion by concluding that it would be absurd to suppose that the General Assembly intended to allow a candidate to qualify in 1988, who, after serving a full term, would still not have enough experience to run for re-election in 1992 (which is Howe's situation).

We find the Attorney General's opinion departs from the plain meaning of the temporary law. Section 3 begins with the phrase, "[f]or election or appointment to the office of sheriff in 1988 only * * *." Nothing could be plainer. The section then provides that a would-be candidate who did not meet the training requirement of (B)(8) (not at issue here) and/or the experience requirement of (B)(9) could, nevertheless, "be considered an eligible candidate." This ability to be "considered" eligible permitted a person to get on the ballot in the primary without qualifying under (B)(8) and/or (B)(9). This ballot qualification was not unconditional, however. The second sentence provides that, if elected, such a candidate had to timely complete R.C. 311.01(D)'s basic training requirement. If he or she did, then the training and/or experience requirements of (B)(8) and (B)(9) were to be waived. If he or she did not timely complete the basic training requirement, the candidate who was "considered" eligible did not complete the eligibility requirement. Thus, the training requirement operated as a condition subsequent to completing eligibility.

There is no break in continuity of thought between the first and second sentences. Therefore, the initial phrase limiting applicability to 1988 applied to the second sentence as well as the first. This is driven home by the third sentence, which declared that Section 3 had no applicability after 1988. Thus, the meaning of the entire provision is plain, and opposed to the interpretation placed on it by the Attorney General, which preserves the Section 3 waiver into the indefinite future.

The Attorney General's conclusion, that it would be absurd for the General Assembly to have intended to allow a person like Howe to qualify in 1988 and yet not be able to succeed himself in 1992, overlooks that the General Assembly could have adopted Section 3 to grandfather in people who had some experience in 1988, but less than the required five years' experience, or less than the required two years' of supervisory experience also required by R.C. 311.01(B)(9).

Accordingly, we hold that while respondent did not abuse its discretion by relying on 1990 Ohio Atty.Gen.Ops. No. 90–112, it did clearly disregard an applicable legal provision, Section 3 of Am.Sub.H.B. No. 683, by deciding that the experience requirement of R.C. 311.01(B)(9) was waived for Howe in the 1992 Democratic primary election.

Therefore, we grant the writ of prohibition as to Howe and order respondent not to place his name on the Democratic primary ballot for the June 2, 1992 election. Respondent's motion for summary judgment is granted with respect to Wilkins and, in part, with respect to Howe.

*Writ allowed in part
and denied in part.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES and RESNICK, JJ., dissent.

HOLMES, J., dissenting.

I dissent from that part of the majority opinion which grants the writ of prohibition as to P. Ken Howe, the incumbent sheriff, which order prevents his name from being placed upon the ballot for reelection. It seems to me that the Attorney General concluded correctly that the General Assembly did not intend to allow a candidate to qualify for a race for sheriff in 1988 who, after serving a full term, then would be prevented from running for reelection on the basis that he did not have sufficient experience. This would be a reasonable interpretation of this statutory provision. I believe the majority's interpretation here to be an unreasonable one.

RESNICK, J., concurs in the foregoing dissenting opinion.